OPINION *Page 2 
{¶ 1} Appellant Shawn Mihal ("Father") appeals the March 18, 2008 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted permanent custody of his four minor children to appellee the Tuscarawas County Department of Job and Family Services ("the Department").[1]
 STATEMENT OF THE CASE AND FACTS {¶ 2} On January 26, 2007, the Department filed a Complaint in the Tuscarawas Court of Common Pleas, Juvenile Division, alleging Shane Mihal and Shawn Mihal, twins (DOB 12/13/1999); Katelinn Mihal (DOB 12/13/00); and Misty Mihal (DOB 11/23/01) were neglected and dependent children. Prior to the filing of the Complaint, on April 6, 2006, Father was convicted and sentenced in Carroll County on one count of illegal use of minor in nudity-oriented material or performance, in violation of R.C. 2907.323. Father completed his term of incarceration and was released from prison on September 13, 2006. Mother and Father relocated to Tuscarawas County.
 {¶ 3} In late 2006, Father was being investigated on allegations of gross sexual imposition against a neighbor girl. The Department began its own investigation after receiving information regarding inappropriate sexual activities between Father and Misty. The Department adopted a Safety Plan as part of its investigation. Mother and Father assented to the Plan, which, inter alia, prohibited Father from having contact with his children pending the outcome of the investigation.
 {¶ 4} The Department subsequently learned Father repeatedly saw the children and Mother continued to permit contact between Father and the children. As a result, *Page 3 
the Department filed the instant action. Following a shelter care hearing, the children were placed in the temporary custody of the Department.
 {¶ 5} On March 5, 2007, Mother and Father appeared before the trial court and stipulated to a finding of dependency with respect to each of the children. The trial court ordered the children remain in the temporary custody of the Department. Sometime thereafter, Father was incarcerated for failure to comply with the terms of his parole on the felony conviction out of Carroll County.
 {¶ 6} The trial court approved and adopted a case plan. As part of the plan Mother and all four children were to complete psychological assessments by Dr. Cassie Hornbeck, a clinical psychiatrist specializing in childhood sexual trauma. Father remained incarcerated until August, 2007. When he was released from prison, Father did not make contact with the Department until October, 2007. Father did not begin any services under the case plan, which included a sex offender assessment and follow all recommendations; a psychological evaluation and follow all recommendations; and provide proof of attendance of a parenting class Father attended while incarcerated.
 {¶ 7} The Department filed a motion for permanent custody on December 4, 2007. The Department's ongoing concerns centered on the results of the children's assessments by Dr. Hornbeck, as well as the fact Father was residing with Mother, and Mother saw no reason to be concerned with the arrangement. Father contacted the Department in 2008, subsequent to the filing of the motion for permanent custody, asking the Department to pay for several services on his case plan. As the permanent custody motion had been filed and was pending, the Department declined to pay the substantial cost of a sex offender assessment at Melymbrosia. At the time, Father had *Page 4 
completed an intake appointment with Community Mental Healthcare, and had scheduled a drug and alcohol assessment.
 {¶ 8} In the interim, Father was indicted on a gross sexual imposition felony charge relative to his conduct with another minor child. The same resulted in a plea agreement wherein he plead guilty to a misdemeanor count of sexual imposition.
 {¶ 9} On March 12, 2008, the instant matter proceeded to hearing on the motion for permanent custody. At the hearing, Mother advised the trial court she would stipulate to the facts set forth in the Department's motion for permanent custody and consent to such a disposition. Father refused to enter into such a stipulation, and the matter proceeded to trial.
 {¶ 10} Dr. Cassie Hornbeck, a licensed psychiatrist previously employed by Northeast Ohio Behavioral Health as a specialist in childhood sexual trauma, testified regarding the four Mihal children. Dr. Hornbeck stated all of the children displayed extreme sexualized behaviors, including placing their private parts in the faces of others and seductive behavior toward adults. Dr. Hornbeck explained their behavior was consistent with extreme exposure to sexualized behavior. Dr. Hornbeck added the level of behavior seen in the Mihal children was much more extreme than would be expected from their exposure to television or magazines. Dr. Hornbeck specifically expressed her concern about Father being a convicted sex offender relative to the children's demonstrated behaviors.
 {¶ 11} Probation Officer Blissenbach, Father's probation officer, testified Father had been completely unsuccessful in complying with the terms of his probation. Blissenbach stated Father had been maxed out on all of the sanctions the parole office *Page 5 
had the authority to impose on him. Father's parole violations included alcohol abuse on more than one occasion as well as residing in a home with a sixteen-year-old minor contrary to the directives of the probation staff. Father was convicted of sexual imposition in December, 2006, which involved an eleven-year-old child.
 {¶ 12} Beth McConaha, the ongoing case manager, testified the children were placed together in a foster home and were doing well. The children had been in that placement since May, 2007. The children required weekly counseling, which was intensive given their ages. McConaha expressed her opinion about the best interest of the children and noted the reasonable efforts made by the Department prior to the filing for permanent custody.
 {¶ 13} Via Judgment Entry filed March 18, 2008, the trial court granted permanent custody of the Mihal children to the Department, finding the children could not and should not be placed with either parent in a reasonable time, and a disposition of permanent custody would be in their best interest.
 {¶ 14} It is from this judgment entry Father appeals, raising as his sole assignment of error:
 {¶ 15} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT SUCH WAS IN THE BEST INTERESTS OF THE CHILDREN."
 {¶ 16} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C). *Page 6 
 I {¶ 17} In his sole assignment of error, Father challenges the trial court's determination the best interest of the minor children would be served by granting permanent custody to the Department.
 {¶ 18} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 19} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 20} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who *Page 7 
are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 21} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 22} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 23} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that *Page 8 
one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 24} The record reveals Father is a convicted sex offender, two of his convictions involved minors. As part of his case plan, Father was required to complete a sex offender's assessment and follow all recommendations, complete a psychological evaluation and follow all recommendations, complete a substance abuse assessment and follow all recommendations, meet with the caseworker, complete parent education, and have his parenting skills evaluated if he was ever to obtain visits with his children, and provide verification of completion of services while incarcerated. Father failed to complete these services. Father has no understanding of his criminal convictions, and has no ability or no desire to take responsibility for his behavior. Father blamed the children's highly sexualized behavior on what they had seen on television.
 {¶ 25} The record reveals the trial court heard competent, credible evidence to support its best interest determination. Father had not had contact with the children since December, 2005. In her report, the Guardian ad Litem noted the children generally indicated they did not wish to return to the custody of either parent, instead preferring to stay in their foster home. The children are attached to their foster family, who provide them with a stable, secure home. There were no other placements available for these children. Mother consented to the court's granting permanent custody to the Department. Father was incarcerated for a sex offense.
 {¶ 26} Based upon the foregoing and the entire record in this matter, we find the trial court's finding the children could not or should not be placed with Father within a *Page 9 
reasonable time as well as its finding it was in the best interest of the children to grant permanent custody to the Department is supported by clear and convincing evidence.
 {¶ 27} The judgment of the Tuscarawas County Court of Common Pleas,
Juvenile Division, is affirmed.
 By: Hoffman, P.J. Gwin, J. and Edwards, J. concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to Appellant.
[1] Stephanie Mihal ("Mother") is not a party to this appeal. *Page 1